Hearing Date: August 21, 2019
Hearing Time: 10:30 a.m.
Hearing Location: Utica, NY

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x
In re                                    :
                                         : Chapter 11
EMPIRE FARMSTEAD BREWERY, INC.,          :
                                         : Case No. 19-
         Debtor.                         : (Main Case)
                                         : (Joint Administration Requested)
                                         :
---------------------------------------------------------------------x
In re                                    :
                                         : Chapter 11
EMPIRE BREWING PROPERTIES, LLC,          :
                                         : Case No. 19-
         Debtor.                         :
                                         :
---------------------------------------------------------------------x

**MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS:**
**(I) AUTHORIZING DEBTORS TO USE CASH COLLATERAL; (II) DETERMINING**
**ADEQUATE PROTECTION PENDING FINAL HEARING;**
**AND (III) SCHEDULING FINAL HEARING**

Empire Farmstead Brewery, Inc. ("EFB") and Empire Brewing Properties, LLC ("EP", collectively, the "Debtors"), by and through their attorneys, Harris Beach PLLC, hereby move this Court entry of interim and final orders, the proposed form of which is attached hereto (the "Interim Order"): (i) authorizing the emergency use of cash collateral on a limited basis, substantially all of which cash collateral is presently subject to the security interest held by the prepetition lender Community Bank, N.A. ("CBS"); (ii) granting adequate protection to CBS; and (iii) scheduling a final hearing (the "Motion"). In support of this Motion, the Debtors respectfully represent as follows:

**JURISDICTION AND VENUE**

1.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.    The statutory and rule-based predicates for the relief requested herein are sections 105, 361, 362 and 363 of title 11 of the United States Code (11 U.S.C. § 101, *et seq.*, the "Bankruptcy Code") and Rules 2002, 4001, 6003 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**BACKGROUND**

1.    On August 20, 2019 (the "Petition Date"), the Debtors filed with the United States Bankruptcy Court for the Northern District of New York (the "Bankruptcy Court") their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code commencing the above-captioned Chapter 11 cases (the "Bankruptcy Cases"). A motion for the Bankruptcy Cases to be jointly administered is pending.

2.    After the filing, the Debtors remained in possession of their assets and continued to manage and operate their businesses as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3.    As of the date of this Motion, no examiner or official committee of creditors has been appointed in these cases.

4.    EP is a New York Limited Liability Company that holds title to the property located at 33 Rippleton Road, Cazenovia, New York 13035 (the "Real Property"). EFB is a New York corporation located at 33 Rippleton Road, Cazenovia, New York 13035, that is engaged in the operation of a farm brewery and tasting room.

2

5.     EFB was opened in June 2016 and is the largest farm brewery in New York State with a facility totaling more than 42,000 square feet on 22 acres (the "Brewery"). The Brewery consists of a tasting room/restaurant with 200 seats inside and an additional 200 seats on the outdoor patio. The tasting room serves alcohol, has a full bar, full service restaurant, is open for public use and has been utilized for numerous private parties for a variety of occasions.

6.     The Brewery has approximately 60 barrels of capacity at any point in time. The Brewery kegs, bottles and cans its craft beer for regional, national and international distribution.

7.     A more detailed factual background relating to the commencement of these Bankruptcy Cases is set forth in the *Affidavit of David M. Katleski in Support of Chapter 11 Petitions and First Day Motions* sworn to on the 20th day of August, 2019 (the "Katleski Affidavit") filed in these Bankruptcy Cases and incorporated by reference herein.

8.     The Debtors seek to stabilize their operations and file a motion seeking the approval of bidding procedures and setting a hearing date for the approval of the sale of the Debtors' assets to a stalking horse bidder. In the interim, CBS has agreed to allow the Debtors to use cash collateral as set forth in the Stipulation Allowing Use of Cash Collateral (the "Stipulation") attached hereto as **Exhibit A**.

## FACTS RELEVANT TO THE MOTION

9.     CBS holds a claim against the Debtors in the principal amount of $8,266,784.71, together with interest of $822,358.89 as of July 9, 2019 with a per diem of $1,347.98 thereafter and attorneys' fees and disbursements of $165,240.92 as of May 1, 2019 with additional fees and disbursements continuing to date (the "Amount Owed").

10.    CBS is the holder of certain promissory notes executed and delivered by the Debtors described in and copies of which are attached as part of Schedule 1 to the Stipulation

("Schedule 1"). In certain cases, Statewide[1] and the JDA were also made parties to certain of the notes and collateral documents, but pursuant to a participation agreement dated June 30, 2015 (a copy of which is also attached as a part of Schedule 1), CBS was made a 100% participant in these obligations pending the closing of the permanent financing in which case its interest would be purchased by either Statewide or JDA. However, the permanent financing transaction never happened due to the Debtors' failures to meet the requirements of Statewide and JDA and as a result CBS is the present 100% owner of all obligations of the Debtors referenced in Schedule 1 of the Stipulation.

11. As security for the obligations described in Schedule 1, including but not limited to the unconditional guarantees of payment of each of the Debtors with respect to the obligations owed by the other, CBS holds valid, perfected security interests in EFB's accounts receivable, inventory, equipment, furniture, chattel paper, contracts, contract rights, chattel paper and all proceeds by reason of a security agreement dated January 7, 2015, executed by EFB in favor of Oneida Savings Bank, now Community Bank, N.A., and a further security agreement covering all personal property and proceeds executed and delivered by EFB in favor of Community Bank, N.A. dated February 13, 2017. The security interests of CBS were perfected by the filing of UCC-1 financing statements in the New York Department of State on January 13, 2015 and June 24, 2016.

12. CBS also holds real property mortgages in its favor which encumber EP's fee interest in the premises commonly known as 33 Rippleton Road, Cazenovia, New York and the buildings located thereon. The mortgages are described in and copies are attached as part of Schedule 3 to the Stipulation ("Schedule 3"). All mortgages were recorded in the Madison

---

[1] Capitalized terms not defined herein are defined in the Stipulation.

County Clerk's office as indicated in Schedule 3. Two (2) of the mortgages also contained an assignment of leases and rents with respect to the mortgaged property and there are two separate assignment of leases and rents for two different mortgages which are also attached as part of Schedule 3. Additionally, CBS also has a perfected security interest in the personal property assets of EP, formerly known as Chapman Properties, LLC, by reason of a security agreement dated January 7, 2015 executed and delivered by Chapman Properties, LLC, n/k/a Empire Brewing Properties, LLC, in favor of Oneida Savings Bank, now Community Bank, N.A. Such security agreement granted CBS a security interest in accounts receivable, equipment, inventory, furniture, chattel paper, contracts, contract rights and general intangibles and in all proceeds of such collateral. The security interest was perfected by the filing of UCC-1 financing statements on January 1, 2015 and June 6, 2016, which were each amended on March 2, 2017 to reflect the name change from Chapman Properties, LLC to Empire Brewing Properties, LLC. Copies of the security agreement and UCC-1 financing statements are attached as Schedule 4 to the Stipulation.

13. The collateral which secured the Debtors' obligations to CBS and the proceeds thereof, including but not limited to, the cash balances in the Debtors' DIP accounts at CBS, and proceeds of all prepetition collateral constitute "Cash Collateral" within the definition contained in Section 363(a) of the Bankruptcy Code.

**RELIEF REQUESTED**

14. The Debtors are seeking permission to allow them to utilize Cash Collateral in their ongoing business operations, subject to certain conditions and terms more specifically set forth in the Interim Order and Stipulation. The foregoing is only a brief summary. In the event of any inconsistency between the below summary, the Interim Order, or the Stipulation, the

5

terms of the Interim Order shall control. Interested parties should review the Interim Order for a complete and accurate understanding.

15. The requested relief to use the Cash Collateral should be granted in accordance with the terms of the budget discussed below because: (a) the use of the Cash Collateral is absolutely necessary for the Debtors to preserve the value of their businesses and the value of the collateral during the pendency of the Bankruptcy Cases; and (b) the proposed use of the Cash Collateral is relatively modest and designed to maintain a minimal status quo while sale offer(s) are being presented to the Bankruptcy Court for approval.

16. The Debtors are seeking the ability to use Cash Collateral for an interim period from the Petition Date until the final hearing date set by the Court, and if approved by the Bankruptcy Court up to October 15, 2019 (the "Termination Date"). The use of the Cash Collateral is for the sole purpose of funding the expenses of operating the Debtors' businesses in the ordinary course in accordance with the operating budget (the "Budget") which is attached hereto as **Exhibit B**, and attached to the Stipulation as Schedule 5.

17. In accordance with the Stipulation and Interim Order, the Debtors' actual expenditures on a weekly cumulative basis shall not exceed the projected expenditures set forth in the Budget by more than ten percent (10%) without the prior written consent of CBS.

18. Debtors agree to provide CBS, on a weekly basis, with a written budget reconciliation report (the "Report") setting forth a comparison of the Debtors' actual receipts and disbursements to those originally projected in the Budget. The Report shall be provided by the Debtors to CBS no later than the close of business on Wednesday of each week, covering the period of the prior week.

19. In accordance with the provisions of Bankruptcy Code sections 361 and 363, and as a condition for the Debtors' use of Cash Collateral, CBS is entitled to adequate protection for and to the extent of any diminution in its prepetition collateral (the "Adequate Protection").  CBS shall be entitled to the following Adequate Protection:

(a) [a]llowed senior administrative expense claims (the "Superpriority Claims") with priority over any and all administrative expenses, adequate protection claims and all other claims against the Debtors, excluding for purposes hereof solely any unpaid statutory fees of the Office of the United States Trustee, now existing or hereafter arising, of any kind whatsoever, as provided under section 507(b) of the Bankruptcy Code, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under the Bankruptcy Code in the amount of the diminution.  If any party in interest objects to the Stipulation and such objection is sustained, or if the Court does not approve this Stipulation, the [CBS] shall be fully protected to the extent of the Debtors' actual use of Cash Collateral in which the [CBS] has an interest prior to entry of an order of the Court curtailing or otherwise modifying the provisions of this Stipulation. The Superpriority Claims shall be payable from all property of the Debtors' estates; provided, however, that avoidance actions arising under Chapter 5 of the Bankruptcy Code, including any proceeds arising therefrom, shall be excluded from the reach of the Superpriority Claims.  Anything herein to the contrary notwithstanding, nothing herein shall be construed as [CBS'] consent to the allowance and payment of any Chapter 7 trustee fees, or any professional fees or expenses of any person, or shall affect the rights of the [CBS] to object to the allowance and payment of such fees and expenses.

(b) Effective as of the [P]etition [D]ate if this Stipulation is approved by the Court by a confirming order duly entered, without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, financing statements, mortgages or other instruments or documents, the grant in favor of [CBS] of replacement, valid, binding and enforceable, fully perfected liens on and security interest in all of the Debtors' assets (the "Adequate Protection Liens"), whether now owned or hereafter acquired, to the same extent, priority and enforceability

held by [CBS] as of the [P]etition [D]ate, except as to avoidance actions arising under Chapter 5 of the Bankruptcy Code, including any proceeds arising therefrom.

20.     The Debtors further agree they have not granted, purported to grant and will not grant any other postpetition liens in assets of the Debtors' estates, except as may be provided by the Stipulation.

21.     The Debtors also agree to undertake all necessary actions to ensure that all proceeds of CBS' collateral are deposited in the Debtors' accounts maintained with CBS, consistent with the Debtors' existing cash management system and as otherwise required under CBS' prepetition loan documents described above.

22.     The Debtors submit the concise statement listing certain material terms of the Debtors' use of Cash Collateral as outlined herein satisfies the requirements of Bankruptcy Rule 4001 and Local Rule 4001-2.

## BASIS FOR RELIEF

23.     Bankruptcy Rule 4001(b)(2) governs the procedures for obtaining authorizing to use Cash Collateral, and provides in relevant part:

> The court may commence a final hearing on a motion for authorization to use cash collateral no earlier than 14 day after service of the motion.  If the motion so request, the court may conduct a preliminary hearing before such 14 day period expires, but the court may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

24.     Similarly, to the extent the Debtors are seeking authority to sell, use or otherwise incur an obligation regarding the property of their estates, Bankruptcy Rule 6004 provides that the Court may only grant such relief to the extent it is necessary to avoid immediate and irreparable harm.

25. Immediate and irreparable harm would result if the relief requested herein is not granted on an interim basis. The Debtors have insufficient available sources of non-collateral working capital to carry on the operations of their businesses. The ability of the Debtors to maintain business relationships with their agents, vendors and suppliers, pay necessary employees and agents, and otherwise finance their business operations is essential to the Debtors' continued viability. In addition, the Debtors' critical need for Cash Collateral is immediate. In the absence of the ability to use Cash Collateral, continued operation of the Debtors' businesses would be impossible, a precipitating liquidation would ensue, and immediate and irreparable harm to the Debtors' estates would occur.

### FINAL HEARING

26. Pursuant to Bankruptcy Rule 4001(b)(2), the Debtors request that the Court schedule the Final Hearing on the Motion as soon as practicable, but in no event later than September 3, 2019, and fix the date prior to the Final Hearing for the filing of objections to the Motion.

### BANKRUPTCY RULE 6003 IS SATISFIED

27. Bankruptcy Rule 6003 provides that a bankruptcy court may approve a motion to "use, sell, [or] lease" property of the estate, or to "pay all or part of a claim that arose before the filing of the petition," prior to twenty-one (21) days after the filing of the petition, "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. Immediate and irreparable harm exists where, as is the case here, the absence of relief would impair a debtor's ability to administer its case or threaten the debtor's future as a going concern. *See In re Ames Dep't. Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in the context of Bankruptcy Rule 4001). The

Debtors submit that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors, as described herein, and that cause exists under Bankruptcy Rule 6003 for the Court to grant immediate relief.

## WAIVER OF NOTICE AND STAY REQUIREMENTS

28. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of an order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h), 7062, 9014 or otherwise.

## RESERVATION OF RIGHTS

29. Nothing in this Motion, nor any payment made pursuant to the relief sought herein, if granted, is intended or should be construed as an admission as to the validity, priority or amount of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim or an approval or assumption of any agreement, contract or lease under section 365 of the Bankruptcy Code, and the Debtors expressly reserve their rights with respect thereto.

## NOTICE

30. Notice of this Motion will be given to (i) the Office of the United States Trustee for the Northern District of New York; (ii) counsel for Community Bank, N.A.; (iii) the joint twenty (20) largest unsecured creditors in the Debtors' cases; and, (iv) all required governmental agencies. In light of the nature of the relief requested herein, the Debtors submit that no further notice is required.

31. No previous application for the relief sought in this Motion has been made to this Court.

**WHEREFORE**, the Debtors respectfully request an Interim Order: (i) enter the Interim Order, in substantially the form attached hereto as **Exhibit C**; (ii) granting the relief sought

herein on an interim basis; (iii) scheduling a Final Hearing on the Motion; and (iv) granting such other and further relief as the Court deems appropriate.

| | |
|---|---|
| Dated: August 20, 2019<br>Syracuse, New York | HARRIS BEACH PLLC<br><br>/s/ Lee E. Woodard<br>Lee E. Woodard, Esq. (Bar Roll No. 601006)<br>Brian D. Roy, Esq. (Bar Roll No. 518479)<br>Office and Post Office Address:<br>333 West Washington St., Ste. 200<br>Syracuse, New York 13202<br>Tel: (315) 423-7100<br>Fax: (315) 422-9331<br>Email: lwoodard@harrisbeach.com<br>            broy@harrisbeach.com<br><br>*Proposed Counsel to the Debtors and*<br>*Debtors in Possession* |